20     39
59L 465

THE FREEHOLDERS OF MIDDLESEX *vs.* THOMAS & MARTIN.

1. Money deposited by a debtor, voluntarily, with a third person, or in a bank, for the benefit of his creditor, without authority of the creditor, is not payment of a debt. The creditor is not bound to send or draw for it, unless he accepts it as payment.

2. A mortgagor borrowed money and gave a second mortgage, agreeing with the lender to use part of the money to pay off a first mortgage, which was held by the board of chosen freeholders. His attorney notified the county collector, who had the custody of the first mortgage, that he had deposited the money in bank, and the collector receipted the bond, and canceled the mortgage of record. In ten days afterwards the bank stopped payment; and the money not having been drawn, the officer canceled the receipt, and appended a memorandum to the record that the cancellation was entered by mistake. *Held*—That the transaction was not a payment. The first mortgage remained a valid security, and might be enforced in a suit for foreclosure.

3. A check or promissory note, either of the debtor or a third person, received for a debt, is not payment, if not itself paid, except in cases where it is positively agreed to be received as payment.

4. Accepting a check or draft implies an undertaking of due diligence in presenting it for payment, and if the drawer sustains loss by want of such diligence, it will be held to operate as payment.

5. A written receipt is not conclusive; but proof is admissible that the payment for which it was given was not actually received.

6. A county collector has power to receive payment of any debt due to the board of chosen freeholders, but has no power to give away a security, or cancel it without payment. He has not the right to deposit their funds in any bank he may select, without their approval.

---

The complainants seek to foreclose a mortgage on lands at Perth Amboy, against Thomas, the mortgagor, and Martin, who holds a second mortgage on the premises; they are the only defendants, and both, in their answers, set up that complainants' mortgage is paid. The facts on which they place this defence are these: On the 31st of December, 1864, Martin loaned to Thomas $500 on the mortgage given to him on that day; part of this sum was given to W. P., the attorney who drew the mortgage, for the purpose of paying off the complainants' mortgage, which was for $300, so that

the mortgage to Martin should be the first encumbrance. W. P. was entrusted, both by Thomas and Martin, to make this payment. The complainants' mortgage was in possession of N. Booraem, the county collector. On the 2d of January, 1865, W. P. wrote to Booraem that Thomas had paid the money to him, and that he had deposited it in the City Bank of Perth Amboy, subject to Booraem's draft, and requested him to have the mortgage canceled, and enclosed the proper fees for canceling, and requested him to retain the papers until Thomas called for them. Booraem received this letter on January 3d, and on the same day wrote a receipt on the bond, and had the mortgage canceled of record, and a minute of the canceling endorsed on the mortgage, and signed by the clerk of the county. W. P. was president of the bank, and handed the money, on the 3d of January, to the cashier, either in the bank or at his own house, with directions to pay it as Booraem should direct. It does not appear that it was credited either to the complainants or Booraem, or that any entry was made in the books of the bank respecting it. Booraem had once an account in the bank, but had no dealings with it in several years before this. He had not, in any way, authorized the payment of this mortgage to W. P. or to the bank, and had recognized the payment in no way, except by canceling the mortgage and endorsing the receipt. He did not draw or send for the money. On the 13th of January, 1865, the bank stopped payment, and, a few days after that, Booraem sent word to W. P. that he would not consider the mortgage as paid. Booraem erased the minute of cancellation from the mortgage, and the receipt from the bond, and tacked a note to the registry of the mortgage that it was canceled by mistake. Thomas never called for the mortgage, and things remained in this state until April, 1866, when Booraem wrote to Thomas to pay the interest. Thomas, who had thought the mortgage was paid, called on Booraem, and, not knowing that the mortgage had been canceled on the registry, promised to pay. Afterwards, upon consideration, he refused,

and this suit was brought. The complainants had not given to Booraem any power, as regarded receiving payments or canceling mortgages, other than such as he possessed by virtue of his office as county collector.

*Mr. H. V. Speer,* for complainant.

*Mr. Patterson* and *Mr. Adrain,* for defendants.

THE CHANCELLOR.

Money deposited by a debter with a third person, or in a bank, for the benefit of his creditor, without the authority of the creditor, is not payment of a debt, nor can the neglect of the creditor, in not calling or drawing for it in a reasonable time, make it payment. This is clear upon principle, but if it needed authority, it is settled as law in this state by the decision of the Court of Errors in *King* v. *The Paterson and Hudson River R. Co., 5 Dutcher* 504.

The only question is, whether the acts of Booraem were such an acceptance as bound the complainants. It is settled that a written receipt is not conclusive, but that it may be shown that the payment for which it was given was not actually received. And a check or promissory note, either of the debtor or a third person, received for a debt, is not payment if not itself paid, except in cases where it is positively agreed to be received as payment. Accepting a check or draft implies an undertaking of due diligence in presenting it for payment, and if the drawer sustains loss by want of such diligence, it will be held as payment. But no such undertaking is implied when the debtor volunteers to leave the money with a third party. No creditor is bound to send or draw for it, unless he accepts it as payment. In this case there was no communication of any kind from Booraem to Thomas, or Martin, or W. P., except the message sent after the bank stopped—nothing that could be construed as an agreement to accept the money left with the cashier, as pay-

D*

ment. It appears that not one of the three knew of the canceling or receipt endorsed until after suit brought.

The question then that remains, is as to the effect of the canceling upon the registry. The statute (*Nix. Dig.* 611, § 11,) says that it "shall be an absolute bar to, and discharge of the said entry, registry, and mortgage." But it is well settled, and rightly settled by a series of decisions of the highest authority upon this statute, that if such cancellation is made without actual payment, or by fraud or mistake, or without authority from the real owner of the mortgage, it is inoperative, and the mortgage remains a valid security, and will be enforced on a suit for foreclosure in this court. *Miller* v. *Wack, Saxt.* 204.

In this case, Chancellor Vroom says : " The simple cancellation is not an absolute bar unless there has been actual satisfaction; it is not conclusive evidence;" but he holds that it is evidence of a very high character of payment, and throws the burthen of proof on the other side to show that it was not paid. Chancellor Pennington, in *Lilly* v. *Quick,* 1 *Green's C. R.* 97, and *Trenton Banking Company* v. *Woodruff, Ib.* 117, approved and acted upon this doctrine. In the last case, a mortgage given to a married woman for her separate use by the will of her father, was canceled by her husband, who was executor of the will, without her consent, and without payment; and the court held that such cancellation, made without authority and without payment, as between the parties themselves, was too palpably void to admit of any question. In *Banta* v. *Vreeland,* 2 *McCarter* 103, Chancellor Green held that such canceling of record by the mortgagee himself, done under misapprehension as to the fact of payment, when it appeared that the mortgage was not in fact paid, did not bar a recovery upon it, and a decree of foreclosure was ordered.

In *Harrison's Administratrix* v. *The N. J. R. R. & T. Co.,* 4 *C. E. Green* 488, the Court of Errors held, that a cancellation on the registry made by a person without au-

thority, and without actual payment, did not bar the mortgage in a suit for foreclosure.

On the doctrine established in *Miller* v. *Wack*, that cancellation is not a bar without actual satisfaction, as it appears clearly in this case that there was no actual payment, or any thing that would, by law, be held to be payment, except for the entry on the papers and record, it must be held that this mortgage was not paid or extinguished, but is a subsisting encumbrance, and a decree must be made for the foreclosure and sale of the mortgaged premises.

I have arrived at this conclusion without taking into consideration the position urged with much force by the counsel of the complainants, that the county collector had no power to cancel the mortgage, or to surrender it without actual payment; and that had he accepted a check, promissory note, or bill of exchange expressly in payment of the mortgage, the complainants would not have been bound thereby. Booraem, as county collector, had power to receive payment of any debt due to the complainants, but like the executor and husband, in *Trenton Banking Company* v. *Woodruff*, he had no power to give away the security, or to cancel it without payment. Nor had he the right to deposit the funds of the complainants in any bank that he might select without their approval. I am much inclined to think that the deposit made by W. P., if it had been made by Booraem's consent, would not be payment to the complainants.