876 A.2d 844

DIANA BRYANT, PLAINTIFF–APPELLANT, v. OHIO CASUALTY INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 26, 2005—Decided June 30, 2005.

Before Judges SKILLMAN, GRALL and GILROY.

*Robert J. Kelley, Jr.,* argued the cause for appellant.

*George A. Prutting, Jr.,* argued the cause for respondent (*Prutting & Lombardi,* attorneys; *Mr. Prutting,* on the brief).

The opinion of the court was delivered by

GILROY, J.S.C. (temporarily assigned).

This is an action against an automobile insurer for payment of personal injury protection (PIP) benefits pursuant to *N.J.S.A.* 39:6A–4. Plaintiff, Diana Bryant, appeals from an order entered in the Law Division on April 16, 2004, granting summary judgment in favor of the defendant, Ohio Casualty Insurance Company

(Ohio), for failure of plaintiff to file her complaint within the time prescribed by *N.J.S.A.* 39:6A–13.1a. The issue presented is whether the limitations period under the statute is triggered by an insurer's issuance of a PIP benefit check without delivery of the check to its insured. We hold that the limitations period commences on the date the check was delivered to the insured, not the date the check was issued. Accordingly, we reverse.

On September 12, 1996, plaintiff was the operator of a motor vehicle insured by Ohio when she was injured in an automobile accident. Plaintiff filed a PIP action in the Law Division for reimbursement of unpaid medical expenses which Ohio contested.

On or about January 24, 2001, the parties reached a settlement whereby Ohio agreed to pay plaintiff $21,000 in full settlement for all outstanding medical expenses, attorney fees and costs of suit. On January 30, 2001, Ohio's counsel forwarded a letter to plaintiff's counsel, along with a form of release and stipulation of dismissal with prejudice (documents), requesting that the documents be executed and returned. The letter confirmed the terms of settlement and advised that Ohio's counsel would hold the stipulation of dismissal until receipt of the settlement check from Ohio, after which the settlement check would be forwarded to plaintiff's counsel and the stipulation of dismissal filed with the court.

On June 14, 2001, Ohio issued a settlement check payable to plaintiff and her counsel and forwarded the check to Ohio's counsel to hold in escrow pending return of the documents. Failing to receive the documents back, notwithstanding five prior written requests for their return, Ohio's counsel forwarded a letter on November 19, 2001, advising that unless the documents were returned within thirty days, Ohio intended to file a motion to enforce settlement. Plaintiff failed to respond, and Ohio filed a motion to enforce the settlement on January 30, 2002.[1] After

---

[1] While not determinative of the issues raised in the appeal, plaintiff's attorney advised the trial court that the delay in returning the closing documents was caused in part by destruction of his file during a fire at his residence.

receipt of the motion, plaintiff's counsel returned the executed documents to Ohio's counsel, who in turn delivered the settlement check to plaintiff's counsel under letter of February 22, 2002.

Plaintiff filed the present action on October 17, 2003, alleging that Ohio had again failed to pay PIP benefits for medical expenses incurred as a result of the September 12, 1996, automobile accident. On February 13, 2004, Ohio filed an answer denying liability and asserting the statute of limitations as an affirmative defense.

Ohio filed a motion for summary judgment on February 23, 2004, seeking dismissal of the action on the basis that the matter was time barred under *N.J.S.A.* 39:6A–13.1a because the complaint had been filed more than two years after June 14, 2001, the date Ohio issued the check. Plaintiff opposed the motion, arguing that the time in which she had to file her second complaint ran from February 22, 2002, the date the check was delivered to her counsel. In the alternative, plaintiff argued that she qualified for the "limited probable future treatment exception" from the statute of limitations recognized in *Zupo v. CNA Ins. Co.,* 98 *N.J.* 30, 483 *A.*2d 811 (1984).

The trial court granted defendant's motion for summary judgment, ruling that the action was time barred, having been filed more than two years after June 14, 2001. The trial court held that where there is a settlement of a contested PIP claim, "the last payment of benefits" under the statute occurs when the insurer issues the settlement check, notwithstanding that the insurer continues to hold the check in escrow, provided the delay in releasing the check was through no fault of the insurer. After ruling that the action time barred, the trial court never addressed plaintiff's alternate argument that she was entitled to an exception from the statute of limitations.

On appeal plaintiff argues that the trial court erred by finding that the limitations period under *N.J.S.A.* 39:6A–13.1a ran from the date of issuance of the check rather than the date of its delivery, and by not addressing plaintiff's argument that she was

entitled to an exception from the statute of limitations. We conclude that plaintiff's complaint was filed within the limitations period under the statute; therefore, we need not decide plaintiff's alternate argument.

Plaintiff argues that the term "payment," as used in the last phrase of the statute, should be construed to require an actual delivery of a settlement check from an insurer to its insured. Ohio, relying on *Everett v. State Farm Indem. Co.*, 358 *N.J.Super.* 400, 818 *A.*2d 372 (App.Div.2002), *aff'd. o.b.*, 175 *N.J.* 567, 818 *A.*2d 319 (2003), argues that for the statute of limitations to be triggered PIP benefits do not have to be delivered but the insurer only needs to acknowledge the validity of the claim and issue a check. While we disagree with plaintiff that there must always be an actual delivery of a check to the insured before the statute is triggered, we conclude that the mere issuance of a check is insufficient to trigger the statute of limitations.

*N.J.S.A.* 39:6A–13.1a provides in pertinent part:

> Every action for the payment of benefits ... shall be commenced not later than two years after the injured person ... suffers a loss or incurs an expense ..., provided, however, that if benefits had been paid before then an action for further benefits may be commenced not later than two years after the *last payment of benefits*.
>
> [*N.J.S.A.* 39:6A–13.1a (emphasis added).]

We previously interpreted the phrase "payment of benefits" more expansively than suggested by plaintiff by adopting the definition of the term "payment," found in *Webster's Third International Dictionary* (1971), which includes not only "the act of paying or giving compensation," but also "the discharge of a debt or an obligation." *Everett, supra,* 358 *N.J.Super.* at 407, 818 *A.*2d 372. Under this definition, the limitations period is triggered by an insurer either: 1) paying benefits under the policy to the insured or to a third-party medical provider on behalf of the insured; or 2) crediting the value of the benefit against the insured's deductible. *Id.* at 410, 818 *A.*2d 372. In either event, it is the insurer's action that determines when the "last payment of benefits" occurs under the statute. In *Everett,* it was the insurer's

act of crediting the value of the benefit against the insured's deductible which constituted a "discharge of a debt or an obligation." Unlike in *Everett,* however, we must determine what constitutes the "act of paying or giving compensation" when the insurer seeks to pay the benefits by check.

■ Payment requires more than just the issuance of a check by an insurer; it requires the check to be delivered to the insured for the purpose of satisfying an obligation or debt. *Grunt v. Zapeikov,* 107 *N.J.L.* 143, 151 *A.* 730 (E. & A.1930) (holding that an owner's drawing of a check to a contractor did not constitute payment of the account for which the check was drawn where the owner retained possession of the check); *Prudential Ins. Co. of Am. v. Fid. Union Trust Co.,* 102 *N.J. Eq.* 281, 140 *A.* 445 (Ch.1928), *aff'd.,* 103 *N.J. Eq.* 279, 143 *A.* 318 (E. & A.1928) (holding that the mere issuance of a check for disability insurance proceeds without delivery of the check prior to the death of the insured did not constitute full payment and satisfaction under the insurance policy entitling the insured's named beneficiary to claim death benefits under the policy).

Delivery of a check may be actual (personal) or constructive by placing the check into the United States mail. *Prudential, supra,* 102 *N.J. Eq.* at 285, 140 *A.* 445; *see also N.J.S.A.* 39:6A–5g, which provides for the limited purpose of calculating when PIP benefits are overdue "payment shall be treated as being made on the date a draft ... was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery."

In the present matter, Ohio never made payment on account of the injuries sustained in the accident until the insurer delivered the check to the plaintiff's attorney on February 22, 2002. Pending its delivery, Ohio continued to retain possession of the check in escrow, retained the funds in its account, along with any interest earned thereon, and maintained the right to direct its attorney to return the check to Ohio.

We reject Ohio's argument that our decision will permit insureds to unilaterally extend the limitations period under the statute by delaying the return of suit closing documents. If an insurer believes that an insured is acting in bad faith by failing to return documents, the insurer has the remedy of filing a motion to enforce the settlement and depositing monies into court on behalf of the insured. Such action would constitute payment and trigger the running of the statute of limitations, giving the insurer the protection under the statute that it seeks.

Reversed.